IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


DAVID SNOWDEN, individually )
and on behalf of all others )
similarly situated, et al., )
                             )
        Plaintiffs,          )
                             )
    v.                       )        CIVIL ACTION NO.
                             )        2:04cv1186-MHT
FRED'S STORES OF             )            (WO)
TENNESSEE, INC.,             )
                             )
        Defendant.           )


ORDER

In this case, brought by plaintiff Sharon Glanton

against defendant Fred's Stores of Tennessee, Inc. (FST)

pursuant to the Fair Labor Standards Act of 1938 (FLSA),

29 U.S.C. §§ 201-219, the following question is presented

on FST's motions for summary judgment: Is a plaintiff who

fails to amend her bankruptcy schedules to include her

FLSA claims within four months of learning of the claims'

existence judicially estopped from pursuing those claims?

Glanton opted into this lawsuit and claims that FST's failure to pay her overtime violated her FLSA rights. Jurisdiction is proper under 29 U.S.C. § 216(b).  As explained below, based on the circumstances presented here, the answer to the question posed is no, that is, the court holds that Glanton's FLSA claims are not barred by judicial estoppel.


## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Glanton became an assistant manager at an FST location in September 2003.  She did not become aware that some of FST's policies may have violated her FLSA rights until a customer who also happened to be a lawyer informed her of this lawsuit.[1]  A few days later, on April 13, 2005, she filed a notice of consent to become a party plaintiff in this case.[2]  At that time, she was a debtor

---

1.  Defendant Fred's Stores of Tennessee, Inc.'s motion for summary judgment (Doc. No. 25), Exs. E & F, Deposition of Sharon Glanton, pp. 16, 109.

2.  Sharon Glanton's consent to become party plaintiff (Doc. No. 23).

in a Chapter 13 bankruptcy case, which she had commenced on September 19, 2002.[3]

On May 3, 2005, FST deposed Glanton,[4] and, on June 3, 2005, it filed a motion for summary judgment (followed later by a supplemental summary-judgment motion), arguing that Glanton is judicially estopped from bringing her FLSA claims because she failed to include those putative claims on her Chapter 13 bankruptcy schedule of assets. On September 15, 2005, the bankruptcy court granted the bankruptcy trustee's August 22, 2005, motion to amend Glanton's bankruptcy plan to reflect the claims against FST in her schedule of assets.[5]

---

3. Defendant Fred's Stores of Tennessee, Inc.'s motion for summary judgment (Doc. No. 25), Ex A, Voluntary Petition, p. 2.

4. Id., Ex. E, Deposition of Sharon Glanton, p. 1.

5. Notice of pending bankruptcy petition (Doc. No. 51).

4

### III.  DISCUSSION

Judicial estoppel is an equitable doctrine, invoked at the court's discretion, under which a party is precluded from asserting a claim in a legal proceeding inconsistent with a claim made in a previous proceeding. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). The doctrine exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). Nonetheless, courts must be cautious in applying the doctrine "'because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party.'" Sumner v. Michelin N. Am., 966 F.Supp. 1567, 1578 (M.D. Ala. 1997) (Thompson, J.) (quoting Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996).

Although the Supreme Court has stated that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," New Hampshire, 532 U.S. at 750 (internal quotations omitted), the Eleventh Circuit Court of Appeals considers two factors to be primary in applying the doctrine to a particular case. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Burnes, 291 F.3d at 1285.  These two factors, in light of the Supreme Court's instructions, are not "inflexible or exhaustive," and courts "must always give due consideration to all of the circumstances of a particular case."  Id. at 1286.  Thus, and in general, judicial estoppel may be applied only in situations involving intentional manipulation of the courts, not when the litigant's contradictory positions are the "product of

6

inadvertence or mistake." Id. at 1287 (quoting Matter of Cassidy, 892 F.2d 637, 642 (7th Cir. 1990)).

In bankruptcy, debtors have a duty to disclose all potential assets, 11 U.S.C. § 521(1), and must amend their financial statements if circumstances change, Burnes, 291 F.3d at 1286. Potential assets include potential legal claims. Spann v. DynCorp Technical Services, LLC, 403 F.Supp.2d 1082, 1086-1087 (M.D. Ala., 2005) (Thompson, J.).

The Eleventh Circuit has applied judicial estoppel on three occasions based on positions taken in bankruptcy proceedings. In all three cases, the plaintiff pursued employment-discrimination claims in judicial or administrative proceedings and then filed documents with the bankruptcy court under oath averring that the employment claims did not exist. See Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir. 2003) (plaintiff filed an employment-discrimination lawsuit; filed for bankruptcy, in which he failed to disclose his lawsuit;

7

and ultimately received a complete discharge of his debts in bankruptcy); <u>De Leon v. Comcar Indus.</u>, 321 F.3d 1289 (11th Cir. 2003) (plaintiff filed an EEOC complaint and then filed for, and obtained, Chapter 13 bankruptcy protection, in which he failed to disclose his employment claims); <u>Burnes</u>, 291 F.3d at 1284 (plaintiff filed for Chapter 13 relief; filed an EEOC charge of discrimination against his employer six months later and then filed a federal lawsuit one year later; two years later, requested that his Chapter 13 petition be converted to a Chapter 7 case and filed documents under oath in which he stated that he had no pending lawsuits or unliquidated claims; and received a complete discharge of his debts four months later).[6]

---

    6. In <u>Parker v. Wendy's Int'l, Inc.</u>, 365 F.3d 1268 (11th Cir. 2004), the plaintiff filed an employment discrimination claim and then filed for Chapter 7 bankruptcy, in which she failed to disclose her lawsuit. The court declined to apply judicial estoppel, holding that the bankruptcy trustee was the real party in interest, and the plaintiff's inconsistent positions could not be imputed to the trustee. <u>Id</u>. at 1272.

(continued...)

Following the Eleventh Circuit's lead, district courts have applied judicial estoppel only where the plaintiff filed bankruptcy documents after taking steps to pursue the employment claims at issue. <u>Traylor v. Gene Evans Ford, LLC</u>, 185 F.Supp.2d 1338, 1340 (N.D. Ga. 2002) (Shoob, J.) (plaintiff filed lawsuit and then filed bankruptcy schedule stating he was not participating in any lawsuits); <u>Scoggins v. Arrow Trucking Co.</u>, 92 F.Supp.2d 1372, 1376 (S.D. Ga. 2000) (Edenfield, J.) (plaintiff demanded payment from alleged tortfeasor following car accident, then filed for bankruptcy in which he stated he did not have any unliquidated claims,

---

6.   (...continued)
The holding in <u>Parker</u> is inapplicable to Chapter 13 cases.  In Chapter 7 cases, all pre-petition causes of action belong to the estate and generally must be prosecuted by the trustee.  <u>In re Dur Jac Ltd.</u>, 254 B.R. 279, 288 (Bankr. M.D. Ala. 2000) (Sawyer, B.J.).  In contrast, a Chapter 13 debtor maintains control over all assets, <u>see</u> 11 U.S.C. § 1303, and therefore has standing to bring suit in his own right.  <u>Dur Jac</u>, 254 B.R. at 288; <u>In re Henneghan</u>, 2005 Bankr. LEXIS 1770 at *20-*24 (Bankr. E.D. Va. June 22, 2005) (Mitchell, B.J.) (citing cases).  Because the case at bar involves a Chapter 13 bankruptcy, Glanton had standing to pursue her claim in her own right and could be subject to judicial estoppel.

and then filed suit against alleged tortfeasor); <u>Chandler</u> <u>v. Samford Univ.</u>, 35 F.Supp.2d 861, 863-65 (N.D. Ala. 1999) (Acker, J.) (plaintiff filed an EEOC complaint and then filed bankruptcy schedule stating he did not have any unliquidated claims).

These cases differ considerably from the case at bar. First, Glanton's claims did not exist when she filed bankruptcy documents under oath. Second, it is undisputed that Glanton did not become aware of the claims until April 2005 and sought to amend her bankruptcy schedules at least as early as August 2005. Finally, Glanton did not file any documents with the bankruptcy court stating that the claims did not exist after she learned about the claims. Thus, applying judicial estoppel here would represent an unprecedented extension of that doctrine. The court concludes that such an expansion is not warranted because these differences seriously call into question whether Glanton took inconsistent positions under oath and whether

Glanton intended to mislead the bankruptcy court, the two key factors that the Eleventh Circuit has directed courts to consider.

## A. Inconsistent Positions

The plaintiffs in Barger, DeLeon, and Burnes submitted bankruptcy schedules stating that they had no lawsuits or unliquidated claims after they had initiated suits or administrative complaints.  In effect, when they told the bankruptcy court that no claims existed, they had already told another court that such claims did exist, making their statements to the bankruptcy court clearly "false."  Barger, 348 F.3d at 1295.

This stands in sharp contrast with Glanton's conduct. In September 2002, Glanton filed bankruptcy documents under oath in which she stated that she did not have any unliquidated claims.[7]  That statement was true when she

_____

7.  Defendant Fred's Stores of Tennessee, Inc.'s motion for summary judgment (Doc. No. 25), Ex A, Voluntary Petition; Ex. B, Debtor's Schedules; Ex. C, (continued...)

made it.   In this suit, she contends that FST began
violating her FLSA rights in September 2003, when she was
promoted to assistant manager at FST.   Simply put, both
positions are correct because each is anchored to a
different time period.   Thus, the position she took under
oath in the bankruptcy proceedings is not inconsistent
with her current position.

To be sure, debtors are under a continuing duty to
amend their bankruptcy schedules.   See Burnes, 291 F.3d
at 1286.   However, this does not change the fact that the
only position Glanton took under oath in the bankruptcy
proceeding was that she did not have unliquidated claims
as of September 2002.   The court-created duty to amend
does not implicitly add the phrase "and never will have
claims in the future" to Glanton's statement under oath
that she had no claims as of September 2002.

Although the court is holding that mere failure to
amend a bankruptcy schedule is not the same as taking

---

7.   (...continued)
Statement of Financial Affairs.

inconsistent positions under oath, this result will not prevent courts from applying judicial estoppel based on a lengthy delay in amending the bankruptcy filings. Because the Supreme Court and the Eleventh Circuit have both clearly stated that courts must consider all factors in applying judicial estoppel, see New Hampshire, 532 U.S. at 751; Burnes, 291 F.3d at 1286, this court has no doubts that other courts faced with a plaintiff who failed to amend a bankruptcy schedule for years and standing to gain a windfall at the expense of the plaintiff's creditors would not hesitate to apply judicial estoppel. Indeed, if Glanton had learned of her claims when they began to accrue in September 2003, yet failed to amend her bankruptcy filings until two years later and only after FST moved for summary judgment, this court would certainly not abuse its discretion to conclude that she was attempting to manipulate the judicial process in her favor and, accordingly, apply judicial estoppel.

13

## B. Intent to Mislead the Bankruptcy Court

In Burnes, the plaintiff contended that his failure to include the claims in his amended schedule was inadvertent. 291 F.3d at 1286. The court held that a "debtor's failure to satisfy its statutory disclosure duty[8] is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Id. at 1287. After noting that it was clear that the plaintiff knew of his claims when he told the bankruptcy court that they did not exist and had a motive to hide them, the court concluded that, "[g]iven these undisputed facts ... the district court correctly concluded that [the plaintiff]

_____

8. The holding in Burnes actually appears to limit application of judicial estoppel to debtors who violate their 'statutory' duty to disclose. It is undisputed that Glanton fulfilled her statutory duty to disclose, that is, she disclosed all her assets when she filed her bankruptcy petition. Because the question presented here is whether she violated the 'court-created' duty to amend her bankruptcy filings when her situation changed, it could be argued that Burnes and its progeny are inapposite. This court, however, assumes that Burnes applies and does not reach this question.

possessed the requisite intent to mislead the bankruptcy court." Id. at 1288. Knowledge of the claims at the time he told the bankruptcy court that they did not exist and motive to conceal the claims were two decisive factors that supported an inference of intent to mislead, but that could theoretically be offset by others.

The panels in DeLeon and Barger seem to have recast and generalized the holding in Burnes as a bright-line test in which knowledge of the claims and motive to conceal are determinative of intent to mislead. Barger, 348 F.3d at 1296; DeLeon, 321 F.3d at 1291. Nonetheless, in their analysis of the two factors, the panels used language suggesting that the inference was permissive rather than mandatory. See Barger, 348 F.3d at 1296 ("Thus, [plaintiff's] knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation."); DeLeon, 321 F.3d at 1292 ("Because [plaintiff] certainly knew about his claim and possessed a motive to conceal it

15

..., we can infer from the record his intent to make a mockery of the judicial system.") (internal quotations omitted).

In light of this language in <u>Barger</u> and <u>DeLeon</u> and the Supreme Court's admonition that courts should not adopt "inflexible prerequisites or an exhaustive formula" and should always consider "specific factual contexts" in applying judicial estoppel, <u>New Hampshire</u>, 532 U.S. at 751, this court does not read <u>Burnes</u> and its progeny to <u>require</u> a court to infer an intent to mislead the bankruptcy court when those two factors are present. Instead, an inference of intent to mislead will generally be justified when the plaintiff was aware of the claims and had a motive to mislead a bankruptcy court.[9]

---

9. Even if this court's reading of <u>DeLeon</u> and <u>Barger</u> is incorrect and they do stand for the proposition that courts must impose judicial estoppel if those two factors are present, those cases conflict with <u>Burnes</u>, which held that courts should not consider any two factors as "exhaustive or inflexible," but should "always give due consideration to all of the circumstances of a particular case." 291 F.3d at 1286. This court is therefore bound to follow <u>Burnes</u> under the Eleventh Circuit's 'prior
(continued...)

16

Glanton clearly had a motive to conceal her claims from the bankruptcy court. See DeLeon, 321 F.3d at 1291 (holding that a financial motive to hide assets exists under Chapter 13 because the amount disclosed affects the amount to be discounted and repaid). However, the record suggests that she failed to amend her schedule prior to April 2005 simply and solely because she did not know that such claims existed before then. Glanton testified that she did not learn about the claims until the customer-lawyer made her aware of this lawsuit shortly before she joined the suit as a party plaintiff in April 2005, and nothing in the record undermines this direct evidence.

Nonetheless, from April 2005 until FST filed its motion for summary judgment in June 2005, Glanton clearly knew of the claims and had a motive to conceal them. Burnes and its progeny would then seem to counsel

_____

9.   (...continued)
panel' rule.  See United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993).

17

applying judicial estoppel here.  However, this case differs considerably from those cases because Glanton did not affirmatively misrepresent that her claims did not exist after she had learned of them and had pursued them in another court.  Instead, she merely failed to amend her schedule for four months after she learned about the claims.  Judicial estoppel does not operate because a party did not move as quickly as she could have; it operates only against "cold manipulation," <u>Johnson Service Co. v. Transamerica Ins. Co.</u>, 485 F.2d 164, 175 (5th Cir 1973).

Indeed, the court in <u>Barger</u> recognized the significance of this distinction when it concluded that the plaintiff intended to mislead the court because, like the plaintiff in <u>Burnes</u>, she "had already filed and was pursuing her employment discrimination claim at the time she filed her bankruptcy petition."  348 F.3d at 1294-95.  It also recognized that failure to amend is not the same as affirmatively misrepresenting the non-existence of

claims that are being pursued in another proceeding.  <u>See</u>
<u>id</u>. at 1295 ("[The plaintiff] did not lack an opportunity
to disclose the lawsuit.  In a Statement of Financial
Affairs ... [she] omitted any reference to her
discrimination claim and then--under penalty of
perjury--signed her name to indicate she had read the
statement and that it was true and correct.  The
statement, of course, was false.").

Although Glanton certainly could have moved more
expeditiously in amending her bankruptcy schedule after
April 2005, such a delay is just as easily attributable
to being busy[10] as intending to mislead the bankruptcy
court.  In contrast to the plaintiffs in <u>Burnes</u>, <u>DeLeon</u>,
and <u>Barger</u>, whose sworn filings with the bankruptcy court
contained affirmative misrepresentations, Glanton's brief

---

10. When Glanton learned of these claims, she was
working full-time and initiating litigation against her
employer.  In fact, FST may have contributed to the
delay, as it deposed Glanton within a month of her
decision to opt into the suit.

period of inaction is not conclusive proof of an intent
to mislead the bankruptcy court.

The court recognizes that a delay in amending
bankruptcy filings can be probative of a party's intent,
and a lengthy delay alone could warrant a finding that
the plaintiff intended to mislead the bankruptcy court.
However, four months, without more evidence indicating an
intent to mislead, is too short a time to be conclusive,
particularly when applying such an extraordinary remedy
as judicial estoppel.  <u>See</u> <u>Sumner</u>, 966 F.Supp. at 1578.[11]

Nonetheless, FST argues that <u>Burnes</u>, <u>DeLeon</u>, and
<u>Barger</u> establish a bright-line rule that  plaintiffs'
claims must be barred whenever defendants file a motion
for summary judgment premised on judicial estoppel before
the plaintiff amends a schedule of assets in a bankruptcy
case to include the claims.  Such a bright-line rule,

---

11. Had FST waited longer, the court might have been
in a better position to discern Glanton's motive.
However, FST moved so quickly in pursuing its "Gotcha!"
legal strategy that it precluded any real insight into
whether Glanton was actually trying to mislead the
bankruptcy court by failing to amend her petition.

however, represents an unprecedented extension of judicial estoppel.

Courts have considered the relationship between a plaintiff's attempt to amend bankruptcy filings and a defendant's motion for summary judgment only when it was clear based on other evidence that the plaintiff knew of the claims before filing the contested bankruptcy documents. See Barger, 348 F.3d. at 1297 (plaintiff filed lawsuit and then filed bankruptcy schedule stating he was not participating in any lawsuits); DeLeon, 321 F.3d at 1292 (same); Burnes, 291 F.3d at 1288 (same); Traylor, 185 F.Supp.2d at 1340 (same); Scoggins, 92 F.Supp.2d at 1376 (plaintiff demanded payment from alleged tortfeasor following car accident, then filed for bankruptcy in which he stated he did not have any unliquidated claims, and then filed suit against alleged tortfeasor); Chandler, 35 F.Supp.2d at 863-65 (plaintiff filed an EEOC complaint and then filed bankruptcy schedule stating he did not have any unliquidated

21

claims).  In each of these cases, the plaintiff had affirmatively misrepresented to the bankruptcy court that no unliquidated claims existed before defendants moved for summary judgment.  Thus, although this factor often corroborates other evidence suggesting that the plaintiff intentionally deceived the bankruptcy court, it has never been treated as dispositive proof of intent to mislead.

Moreover, such a bright-line rule misapprehends the purpose of judicial estoppel.  Judicial estoppel exists to protect the integrity of courts, not the parties' interests, and it is certainly not intended as an offensive weapon available to defeat plaintiffs' claims.  See Burnes, 291 F.3d at 1286 ("The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants.").  However, that is precisely how FST is attempting to use judicial estoppel here.  Lacking any evidence that Glanton intended to mislead the court, FST would mandate such an inference based solely on actions that it took.  Judicial estoppel is concerned with how a

22

plaintiff's actions and intent affect the integrity of
the courts, yet FST's approach would prevent the court
from probing actual evidence of the plaintiff's intent as
long as the defendant took certain actions.  In short,
this rule would misdirect the court's inquiry.

Finally, such an approach would lead to perverse and
absurd results.  Under this rule, FST could have sought
summary judgment on May 4, 2005, the day after Glanton's
deposition; indeed, had FST deposed Glanton immediately
after she opted into the lawsuit or run a court records
search and discovered the bankruptcy case the day she
opted into the lawsuit, it could theoretically have moved
for summary judgment within a day or two of her decision
to opt into this lawsuit.  If FST's bright-line rule
applied, Glanton's failure to amend her bankruptcy
filings less than a month (or even days) after learning
of the claims in the first instance could have completely
barred her from pursuing claims which would otherwise be
available.  Plaintiffs would effectively be barred from

pursuing claims on the merits simply because the defendant won a race to the courthouse and absent any proof that the plaintiff actually intended to mislead the bankruptcy court.

Some might argue that such a result is not problematic because it would better protect creditors: Bankruptcy debtors would have to be 'super-vigilant' about unliquidated claims and would have to disclose any potential claims before acting on them. However, Congress, which sets the rules and procedures for bankruptcy debtors through the Bankruptcy Code, has imposed no such requirement. Indeed, it is not hard to see why: If debtors automatically forfeited all claims they did not disclose, creditors could lose access to substantial assets should a debtor inadvertently fail to disclose a claim. Simply put, such a requirement could actually harm creditors. This court would clearly overstep its role if it used judicial estoppel, an equitable doctrine created by courts to protect the

integrity of the judicial system, to advance policies that Congress declined to pursue in the Bankruptcy Code. The court therefore rejects FST's proposed bright-line rule.

***

Having given "due consideration to all of the circumstances of [this] case," Burnes, 291 F.3d at 1286, and in light of the foregoing analysis, the court finds, and holds, that Glanton's failure to amend her bankruptcy schedule for four months after learning of the FLSA claims was not intended to make a mockery of the judicial system by manipulating the bankruptcy court or this court. Accordingly, Glanton is not judicially estopped from pursuing her claims against FST.

25

It is therefore ORDERED that defendant Fred's Stores of Tennessee, Inc.'s motions for summary judgment (Doc. Nos. 25 & 63) are denied.

DONE, this the 10th day of March, 2006.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE